Loring, J.,
delivered the opinion of the court:
The petitioner claims the net proceeds of 153 bales of cotton. And we find the material facts to be: That the. petitioner was a merchant of New York, and owned 195 shares of the corporate stock of the Central Cotton Press, a corporation in the city of Savannah; that by deed executed on the 22d day of April, and acknowledged the 20th day of May, 1861, in the city of New York, the petitioner purported to convey to Octavus Cohen, of Savannah, the said 195 shares, for the sum of $23,500; that the deed was sent from New York, by Mr. Dillon, to Mr. Cohen at Savannah, and by him received there between the 20th May and the 31st May, 1861; and that it was recorded in the records of the superior court for Chatham County, Georgia, on the 16th March, 1864; that no part of the consideration specified in the deed was paid, and that the deed was intended only to place the property in the name of Mr. Cohen, to protect it from seizure by the confederate government. And Mr. Cohen held the property for the benefit and account of the petitioner.
After commercial intercourse was prohibited between the States loyal to the Union and those in insurrection, Mr. Cohen advised the petitioner that he had possession of his property, and the petitioner replied that he had received Mr. Cohen’s letter. This correspondence was by way of Liverpool, and through a friend of Mr. Cohen’s there.
In October, 1863, Mr. Cohen purchased for himself, and with his own funds, 153 bales of cotton, and at some time subsequent to this purchase he received as dividends from the shares of the cotton press, standing in his name and belonging to the petitioner, $37,303 26; and he afterward, to wit, on 18th March, 1864, invested this money in the 153 bales of cotton he had purchased for himself, and thus transferred the cotton to Mr. Dillon at its cost and expenses. And he thereupon entered the *591 cotton on Ms books to tbe credit of tbe cotton press, to protect it from sequestration by tbe confederate government. Tbe cotton remained in tbe Central Cotton Press, where it bad been previously stored by Mr. Coben. At tbe time of tbis transfer of tbe cotton, Mr. Coben was abundantly provided with funds of bis own.
At tbe time of tbe purchase of tbe cotton in October, 1863, by Mr. Coben, be bad in bis bands no funds of Mr. Dillon’s. And tbe dividends, as they were afterward received from tbe Central Cotton Press by Mr. Cohen, were entered in bis books in tbe tbe name and to tbe credit of tbe Central Cotton Press, to separate themfrom Mr. Cohen’s property, and to protect them from seizure by tbe Confederate government.
An invoice of the ucotton, dated Savannah, January 18,1864, was made out by Mr. Coben and sent by him to Mr. Dillon, but when it was sent did not appear.
In January, 1865, tbe cotton was returned by Mr. Coben to Colonel Kansom, as tbe property of Mr. Dillon, and it was taken possession of by tbe United States and sold by them at auction, and its net proceeds, amounting to tbe sum of $20,532 60, paid into tbe public Treasury.
Tbe 195 shares in tbe Central Cotton Press conveyed by Mr. Dillon to Mr. Coben were retransferred by him to Mr. Dillon by deed executed and acknowledged by Mr. Cohen, and recorded in Savannah February 13, 1865.
During tbe war, (but when did not appear,) tbe said shares were seized by tbe Confederate government, and Mr. Coben defended bis title to them by the deed from Mr. Dillon to him. And tbis was done for tbe benefit of Mr. Dillon as an old and intimate friend.
Tbe petitioner has at all times borne true allegiance to tbe government of tbe United States, and has not in any way aided, abetted, or given encouragement to rebellion.
Mr. Coben was an assistant quartermaster general in tbe military service of tbe State of Georgia, cooperating with tbe Confederate government in tbe rebellion.
In tbis case tbe' deed of tbe claimant transferring to Mr. Coben the shares in tbe Central Cotton Press in Savannah was dated in New York, tbe 22d of April, 1861, and acknowledged in New York by tbe claimant on tbe 20th May, 186Í, and tbe *592 conclusion is that it was sent to Mr. Cohen in Savannah, and received by him there after the last-named date.
In the case of Reeside v. The United States, (2 C. Cls. R., p. 481,) this court held “ that from and after the proclamation of the President of the United States on the 15th of April, 1861, a state of actual war existed between the United States and the Confederate States of the South,” because that proclamation declared that “the laws of the United States have been for some time past, and now are opposed, and the execution thereof obstructed in the States of North Carolina, Georgia, Alabama, Florida, Mississippi, Louisiana, and Texas, by combinations too powerful to be suppressed by the ordinary course of judicial proceedings, or by the powers vested in the marshals by law.
And the doctrine declared by the Supreme Court in the Prize Cases (2 Black, 635) is as follows:
“As a civil war is never publicly proclaimed, eo nomine, against insurgents, its actual existence is a fact in our domestic history which the court is bound to notice and know.
“The true test of its existence as found in the writings of the sages of the common law may be thus summarily stated: When the regular course of justice is interrupted by revolt, rebellion, or insurrection, so that the courts of justice cannot be kept open, civil war exists and hostilities may be prosecuted on the same footing as if those opposing the government were foreign enemies invading the land.”
And on this ground the Supreme Court affirmed the right of the President to constitute the blockade of the southern ports, which was an act of war; and held that vessels captured on the high seas in the spring of 1861 were prize of war. And on the same ground Congress passed its Act of 13th July, 1861, “approving, legalizing, and making valid all the acts, proclamations, and orders of the President,” by which war measures had been instituted before the session of Congress in the summer of that year.
It follows that the deed from the claimant to Mr. Cohen was made during war, in which by the common law and the law of nations all peaceful intercourse was forbidden and unlawful between the citizens of New York and the citizens of Georgia.
And the evidence shows that it was the intent and object of the deed to make Mr. Cohen the agent of the claimant for him and for his benefit, to cover the property with the name and *593 apparent title of Mr. Cohen, so as to protect the property and the dividends it might yield from seizure by the Confederate government, as enemy’s property. It was thus an agency constituted between enemies, in a time of war, to operate during war. And such an agency was au illegal and prohibited transaction when it was made and while it continued; and no claim founded oh it, or growing out of it, 'or of any act done under it, or in pursuance of it, can be maintained in this court. Whatever may be its quality between Mr. Dillon and Mr. Cohen, in the view and policy of the law and in the language of its authorities, “it is all noxious, and in a greater or less degree it is criminal.”
It is true that the deed on its face merely purported to convey the shares in the Central Cotton Press to Mr. Cohen, and did not purport to authorize him to receive the dividends, and invest them in cotton for the claimant. But the power to receive the dividends as they accrued was the direct consequence of the deed to Mr. Cohen and its necessary effect, and was thus a part of the original transaction, and must be assumed as the purpose of the parties in entering into it; and whether those dividends were held in the currency in which they were received, or were invested aucl held in something of more permanent value, is entirely immaterial. In either shape they were the fruits of au illegal transaction and tainted with its illegality. The case claimed for the petitioner was, that Mr. Cohen having Mr. Dillon’s money in his hands, invested it in cotton, sua sponte and without any suggestion from Mr. Dillon, and merely to serve an old and intimate friend. But Mr. Dillon in time of war sent Mr. Cohen the deed which produced the money; and it is of that illegal transaction that Mr. Dillon is now claiming the benefit. The sole purpose of the deed was to protect Mr. Dillon’s property, and the investment in cotton was the mode in which that purpose was carried into effect.
It it true that a belligerent state may so modify the relations of a state of war as to permit commercial intercourse with its enemies; and in this case Mr. Cohen testified that he received the deed before intercourse was interrupted, and mail communications between the loyal and disloyal States were not suspended by our government till May 31, 1861; and by the act of July 13, 1861, Congress authorized the President, in certain cases, to' declare disloyal States to be in insurrection, and *594 enacted that “ thereupon” commercial intercourse should cease and be unlawful. And the implication is not without force that while the government continued the mail service, and until the President had executed the power given to him, intercourse was not forbidden but permitted; and that an agency constituted then, like an agency constituted before a war, might, for some purposes, and such as receiving aud securing money accruing to the principal, continue iuto the war. But such an implication would not serve a case like this, for here the agency was made in direct reference to the war and because of it, and to operate during the war. It was to cover and protect Mr. Dillon’s property throughout the war, and was intended to be a standing relation between enemies, for as long as they should continue enemies, and thus made peaceful intercourse between enemies; for the fact is found that it induced a correspondence betweén Mr. Dillon and Mr. Cohen, by the way of Liverpool, after intercourse was prohibited. It has no resemblance, therefore, to an agency constituted in a time of peace aud innocent of all reference to a time of war; nor to'a single commercial transaction begun and finished before the commercial intercourse contemplated by the act of’Congress ivas forbidden by it.
On the facts found it is ordered that the petition be dismissed.